# JOSIAH D. DUNNING

## *v.*

## THE CITY OF AURORA *et al.*

| 40 | 481 |
| 135 | 397 |
| 40 | 481 |
| 141 | 59 |
| 40 | 481 |
| 151 | 467 |
| 40 | 481 |
| 51a | 132 |
| 52a | 614 |
| 40 | 481 |
| 46a | 561 |

1. CHANCERY — *nuisance removal.* As a general rule, equity will not exercise jurisdiction to remove a nuisance until it is found to be such by a jury, either in an action at law or on an issue out of chancery.

2. SAME — *nuisance — injunction.* An erection, if made, might be a nuisance, and still a court of equity could not interfere, but would leave a party to his action on the case. That it would depreciate the value of complainant's property, if erected, is not ground for granting an injunction.

3. SAME. A court of equity may, in some cases, grant an injunction to stay the erection of what would prove to be a nuisance, but it will act with caution, and this is always so when there is a remedy at law, until after the right has been determined by a jury. And the court always acts reluctantly in abating a nuisance, and seldom, if ever, until it is found to be such.

4. SAME — *indictment.* An indictment lies to punish the offender and to abate a public nuisance, and also an information in equity to redress the grievance by injunction, but the cases are principally confined to those seeking preventive relief, and generally only to stay irreparable damage until a trial is had at law.

5. SAME. Where a building has been erected, the court would only interfere in an extreme case to remove it. A powder mill or magazine erected in a populous part of a city, or adjoining to or near a complainant, endangering the lives of persons or the destruction of property, before the question could be determined by a jury, might authorize a court of equity to interfere, but, where it is only inconvenient, no matter how great, a court of equity would not abate it before the question is settled at law.

6. HIGHWAY — *obstruction — remedy.* Where the nuisance complained of is an obstruction of a highway, the remedy at law is complete. If, in such a case, it were found that there was no sufficient remedy at law, it might be that equity would interpose.

APPEAL from the Circuit Court of Kane county; the Hon. ISAAC G. WILSON, Judge, presiding.

This was a bill in chancery filed in the Court of Common Pleas of the city of Aurora, by Josiah D. Dunning, against the city of Aurora, Caroline Gates, R. Wilder Gates, Thomas Golden, Charles Hoyt, Robinson L. Carter and Columbus

Pinney. The bill was filed to have certain buildings alleged to have been erected in a public street, and claimed to be also a private nuisance, so found and removed and abated. Answers and replications were filed and the case was removed to the Circuit Court of Kane county by change of venue.

On the hearing the court refused the relief and rendered a decree dismissing the bill at the costs of complainant. To reverse that decree the case is brought by him to this court. The facts appear in the opinion of the court.

Messrs. LELAND & BLANCHARD and Mr. B. F. PARKS, for the appellant.

Messrs. WAGNER & CANFIELD, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a suit in chancery, commenced by Josiah D. Dunning, in the Court of Common Pleas of the city of Aurora, against the city and a number of persons claiming to be owners of property in the city. The bill alleges, that, in the year 1851, Roswell Wilder was the owner of lands in North Aurora, adjoining to C. Hoyt, and to the north of his lands. That Wilder laid out a street forty feet wide, east of River street, and from the foot of Galena street, running along the north line of the land owned by Hoyt. That the street had been opened, used and traveled continuously until the bill was filed.

That, in the year 1857, Hoyt owned the lands south of and adjoining to Wilder, and to this street. That Hoyt platted his land into town lots and sold to complainant seven lots, which lay together and front on River street on the north, and the most easterly lots adjoined this forty foot street on the east. That, relying on this forty foot street as legally established, together with an alley connecting therewith, complainant, in 1858 and 1859, at an expense of $27,000, erected a block of stone buildings fronting on River street, with the easterly end

of the block on this forty foot street. That, in 1860, Wilder prepared another plat of the premises, in which this street was again recognized as a public highway.

That, in 1863, the city adopted fire ordinances, establishing fire limits in the city, prohibiting the erection or removal of wooden buildings within certain limits, including the property of complainant and a space of more than one hundred and fifty feet in every direction therefrom. That, in November, 1860, the city of Aurora established a street forty feet in width from the east end of this street dedicated by Wilder, easterly running across Fox river, intersecting with Main street. That up to that time, complainant was in the full enjoyment of the streets adjoining his block of buildings, which was isolated and secure from danger of fire from wooden buildings, thus rendering insurance low, and affording access and light to all parts of his building, which he claims were rights indispensable to the enjoyment of his property.

That, in the month of November, 1860, a long row of wooden buildings were removed to the rear of his block. That he thereupon immediately complained to the common council, protesting against such a violation of the ordinance; but instead of causing their removal, the common council granted a permit to place and continue them where they then stood, and they were so continued. That, on the 18th of February, 1860, the common council passed an ordinance, vacating this forty foot street, including that part on the north side of complainant's buildings, without notice or his consent, but secretly and wrongfully. He denies the right of the city to vacate or close the street, as he had a vested right to have it remain open as accessory to his property. That, after vacating the street, the city conveyed the ground over which it ran, to Caroline Gates. That the city, to annoy complainant, had granted a license to Golden & Gates to erect a wooden building in the space claimed to be a street, and adjoining to complainant's block. That, in pursuance to the permit, they had erected such a building in the street adjoining complainant's block.

The bill prays a decree setting aside the ordinance which

declares that the street is vacated; and ordering these wooden buildings to be removed from the street; for the cancellation of the deed from the city to Caroline Gates, and that defendants might be perpetually enjoined from placing any obstructions in the street, and for other or further relief.

The defendants all filed answers but the city. They admit that Wilder owned the lands north of Hoyt's addition, as charged in the bill; but they deny that he dedicated the street, or platted or placed on record a map whereby a street forty feet in width, opposite Galena street, and along the line of Hoyt's land, was marked as such, or was dedicated to the public as charged in the bill, or that any such street had been used for public travel as charged. That the map of Wilder's addition to West Aurora was laid out, platted and acknowledged by William A. Tanner, the surveyor, and not by Wilder. The answers deny that any such street appears on the map, or that Wilder or Tanner intended to plat any such street.

That previous to 1840, it was claimed by divers persons that a State road existed over the premises in controversy. Also over a strip of like width on the adjoining land of Hoyt, including a part of the ground on which complainant's block was erected. That since 1840, that portion of the road has been abandoned by the public. That Wilder, up to the time of his death, in June, 1860, claimed that the public had lost all right to use that portion of the road. The answers, however, insist that he placed the maps on record, and that the map made in 1860 was made to explain that of 1851. That, by agreement, a street was laid out by the city north of this, and to be in its stead, and that the former should be vacated, which was done by the common council. They deny that complainant was ever in the enjoyment of the street as alleged. That in 1861, the real estate which had belonged to Wilder was divided among his heirs, and this strip on that division fell to Caroline Gates as a part of her share, and that the city afterward quitclaimed the strip in controversy to her as the owner of the fee, when the street was vacated. That in 1864, Caroline Gates leased the premises to Thomas Golden for the

period of five years; and before the lease was executed the permit was granted by the common council to Golden to erect a wooden building on the strip of ground. Replications were filed and the cause set down for hearing.

Afterward a hearing was had on the bill, answers, replications, exhibits and other proofs. On the hearing, the court below refused the relief sought by the bill, and dismissed it. To reverse the decree the case is appealed to this court, and various errors are assigned.

In the case of the *Earl of Ripon* v. *Hobert*, 3 Mylne & Keen, 169, Lord BROUGHAM held, that if the thing itself was a nuisance, the court of equity will interfere to stay irreparable mischief without waiting the result of a trial at law; and will, according to the circumstances, direct an issue, or allow an action to be brought, and if need be, expedite proceedings, the injunction in the mean time being continued. But where the thing sought to be restrained is not unavoidably and in itself noxious, but only something which may, according to circumstances, prove so, then the court will refuse to interfere until the matter has been tried at law, generally by action, though in some particular cases an issue may be directed for the satisfaction of the court where an issue can be framed to meet the question. The distinction, he says, between the two kinds of erection is obvious, and the soundness of that distinction seems undeniable, which would make the court very slow to interfere, where the thing to be stopped, while it is highly beneficial to one party, may very possibly be prejudicial to no person. The great fitness of pausing before we interrupt men in those modes of enjoying or improving their property which are *prima facie* harmless, or even praiseworthy, is equally manifest.

In the case of *Crowder* v. *Linkler*, 19 Ves. 617, it was held, by Lord ELDON, that, if the subject was represented as a mere public nuisance, he could not interfere in the case, as the attorney-general is not a party; and if he was a party, unless it was clearly a public nuisance, generally the court will not interfere by injunction until it has been tried at law. Again,

in the case of the *Attorney General* v. *Nichol*, 16 Ves. 338, the same chancellor held, that cases might exist upon which a court of equity could not interfere, yet an action on the case might be well maintained. And that diminution of the value of premises is not ground for granting an injunction.

From these cases, it appears that a court of equity will, under some circumstances, grant an injunction to restrain the erection of a nuisance, but with great caution. This is always so where there is a remedy at law, until the right has been established by a verdict. And a court will always act with reluctance in abating a nuisance, and seldom, if ever, until it has been regularly found to be such by a jury. Mr. Justice STORY, in his work on Equity Jurisprudence (§ 922) says, that in case of a purpresture, the remedy for the crown is either by an information of intrusion, at the common law, or by an information at the suit of the attorney general in equity. In case of a judgment upon an information of intrusion, the erection will, whether it be a nuisance or not, be abated. But on a decree in equity, if it appear to be a mere purpresture, without also being a nuisance, the court may direct an inquiry to be made, whether it be most beneficial for the crown to have it removed. But if it also be a public nuisance this cannot be done.

In section 923, of the same work, it is also said, that in cases of nuisances, properly so called, an indictment lies to abate them and to punish the offender. But an information also lies in equity to redress the grievance by way of injunction. The instances of the interposition of the court, however, are (it is said), principally confined to informations seeking preventive relief. From these authorities it appears that the thing must be a nuisance before a court will grant preventive relief to stay irreparable damages, until the question is determined by an action at law. If, however, the thing is not necessarily a nuisance, but something which may or may not be, the court will not stay the party until the matter has been tried at law, or in special cases by a jury on an issue directed out of chancery.

In this case, the building complained of is not necessarily a nuisance to complainant. We know that in cities and villages it is not unusual to erect buildings adjoining to each other. And it may be that this building is highly beneficial to the owner, and not injurious to complainant. Or, if so, for aught that we can see, his remedy may be at law. But be that as it may, the building having been erected, a court of equity would not, unless in an extreme case, interfere to remove the building. If it were a powder mill or magazine erected by an individual in the populous part of a city, or adjoining to the complainant, or so near to him as to endanger the lives of himself and family, or the destruction of his property before the question could be passed upon by a jury, it might probably be otherwise. But, if it is only, as it is in this case, an inconvenience, no matter how great, a court of equity would have no right to interfere and abate the nuisance, at any rate, before the question is settled at law.

Then, if it is a public nuisance, by obstructing a public highway, the remedy at law would seem to be ample and complete. If it should be found that the ground had been dedicated as a street, and that it had never been vacated or abandoned, and that the building was illegally erected thereon, and there was no sufficient remedy, then it might be that equity would interpose, but not till then. If equity were to assume jurisdiction to settle the right and to abate public nuisances, it would effectually destroy the right of trial by jury in this class of cases.

In this case, the evidence is voluminous, and, to some extent, conflicting, and, as several doubtful questions are involved, we think that they should have been passed upon by the jury, and determined whether this was a private nuisance. The court below did right in refusing the relief sought. But, lest questions might arise whether the dismissal of the bill would be a bar to an action at law, as well as in chancery, the dismissal should have been without prejudice. The dismissal of the bill is affirmed, but the decree of the court below is so far modified that the dismissal is without prejudice.

*Decree modified.*