## JULIUS WANGELIN *et al.*

### *v.*

## HENRY S. GOE.

1. INJUNCTIONS—*of affidavits on a motion to dissolve.* Where a motion is made to dissolve an injunction, on the face of the bill, no answer being filed, it is not the practice in our courts to receive affidavits in support of such a motion. The motion would operate in the same way as a demurrer to the bill, and being based on matters intrinsic, appearing upon the face of the bill, no affidavits showing extraneous matter could be used.

2. But after answer filed, denying the allegations of the bill, upon motion to dissolve the injunction, it is allowed to either party to introduce testimony to support the bill and answer; in such case the motion is to be decided upon the weight of testimony, without taking the answer as absolutely true.

3. DEMURRER IN CHANCERY—*for want of jurisdiction.* When it is disclosed upon the face of a bill in chancery, that the court has no jurisdiction, because the party has an adequate remedy at law, the bill is obnoxious to a demurrer for want of equity, and it will be so adjudged on error or appeal.

4. INJUNCTIONS—*when allowable.* An injunction is understood to be a preventive remedy merely, and cannot be so framed as to command a party to undo what he has done. Nor is it allowable to grant an injunction for the purpose of restraining a party from doing an act which he is alleged to have already done.

5. In a proper case, a court of chancery will restrain, by injunction, any person who, by brute force, with weapons, is molesting a party in the peaceable and lawful possession of his property, provided the rules of law, in their application to the case, shall afford him no adequate remedy.

6. But where a party enters by force upon premises in the possession of another, during the temporary absence of the latter, and does no act while in possession except to maintain it, an injunction will not lie at the instance of him upon whose possession the intrusion is made. The injury being already done, the writ can have no operation, for it cannot be applied correctively, so as to remove it. In such case, the party injured will be remitted to his remedy at law, which is adequate, by an action of ejectment, or forcible entry and detainer.

7. Nor in such case, will it help the want of jurisdiction in chancery, to allege that the wrong-doer is insolvent, so that the damages resulting to the party injured by reason of being kept out of possession could not be collected from him upon execution at law. Those are not such irreparable damages as will call for the restraining power of a court of chancery to prevent.

8. WRIT OF RESTITUTION—*when awarded in chancery.* A party obtained an injunction against one who had forcibly intruded upon premises in possession of the former, and upon demand under the injunction the wrong-doer refused to restore the possession; an attachment for contempt was thereupon issued against the latter for his alleged refusal to obey the injunction, upon learning which he surrendered the possession to the sheriff. The injunction being wrongfully sued out, upon its dissolution the court should, upon motion, award a writ of restitution, so as to restore to the party who had made the forcible entry, the possession which he had yielded in view of the proceedings under the injunction, and leave the party injured to his action at law to recover his possession.

9. FINAL DECREE—*upon overruling demurrer to bill in chancery.* Upon overruling a demurrer to a bill in chancery, it is not necessary the court should rule the defendant to answer, but may at once proceed to a decree.

APPEAL from the Circuit Court of St. Clair county; the Hon. J. GILLESPIE, Judge, presiding.

The opinion states the case.

Messrs. G. & G. A. KŒRNER, for the appellants.

Mr. WM. H. UNDERWOOD and Mr. G. M. STEWART, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The important question raised on this record is, as to the power of a circuit judge to grant an injunction on the facts stated in the bill of complaint, and that brings up the question of the refusal of the court to dissolve the injunction on motion, and the ruling of the court in disallowing a demurrer to the bill.

Appellants make the point, first, that the motion to dissolve should have been allowed, as the material allegations of the bill were disproved by the affidavits submitted by the defendants in support of the motion.

We are not advised of any practice in our courts to submit affidavits on a motion to dissolve an injunction, and do not understand by what proceeding the affidavits, to which reference is made, have become a part of the record in this case. The motion to dissolve the injunction operates in the same way as a demurrer to the bill, and is based on matters intrinsic, appearing on the face of the bill, hence, no affidavits, showing extraneous matter, could be used. *Titus* v. *Mabee,* 25 Ill. 257.

When an answer is filed denying the allegations of the bill, it would then be in order to move for a dissolution of the injunction, as provided in chap. 72, entitled "Ne exeat and injunctions," sec. 13 of which provides that upon filing an answer it shall be in order at any time to move for the dissolution of an injunction, and upon such motion, it is allowed to either party to introduce testimony to support the bill and answer, and this is substantially the English practice. This motion is to be decided by the court upon the weight of testimony, without being bound to take the answer as absolutely true. Gross' Stat. 458.

The motion to dissolve, and the production of affidavits, were, therefore, premature, and the court did right to disallow it.

The next point made is, that the demurrer to the bill should have been sustained, and the bill dismissed for want of equity on its face.

The office of a demurrer to a bill in equity is to deny, in form and substance, the complainant's right to have his case considered in a court of equity, and to admit all the allegations that are properly pleaded, and when it is disclosed on the face of the bill that a court of equity has no jurisdiction, because the party has an adequate remedy at law, the bill is obnoxious to a demurrer for want of equity, and it will be so adjudged on error or appeal. *Winkler* v. *Winkler et al.* 40 Ill. 179.

To determine if the demurrer was well taken, we must look at the facts stated in the bill of complaint.

The most important, are briefly these: That complainant Goe is a resident of St. Clair county, and on the 9th of November, 1868, one Henry C. Yaeger was in the lawful possession of certain real estate in the town of Lebanon, in that county, containing two acres and four rods of ground, "being the tract of land known as the Wangelin Mill tract;" that Yaeger sold the same to complainant for fourteen thousand dollars, with the appurtenances, in fee simple, and put complainant in possession; that while so in possession he made valuable and lasting improvements on the premises and put the mill in good running order, and was running the mill; and had in it wheat and corn belonging to himself and his customers, to be ground into flour and meal, of the value of one thousand dollars, and that he was operating the mill with great profit to himself, his customers, and to the community generally; that, being thus in possession, on the 25th day of January, 1869, about 12 o'clock noon of that day, while he was absent at dinner, the defendants, Wangelin and Houer, combining with others unknown, against the will of complainant, and with force and arms, broke and entered into possession of the premises, and with drawn pistols drove the miller from the premises, and have ever since, with a guard of armed men, with force, kept possession of the mill by day and by night, and deprived complainant of the use of the mill, thereby depriving him of large gains and profits; that thereby he has suffered irreparable injury and damages for which he has no adequate remedy at law, and he charges that neither of the defendants has property subject to execution at law. The prayer is, that the defendants, and all persons under them, be enjoined from interfering with complainant in the possession and operation of the mill, and that, on the final hearing, the injunction may be made perpetual, and for other relief.

It is apparent, the sole object of the bill was for an injunction to restrain defendants from doing what the bill alleges

they had done, and if it was to have any effect whatever, it must be made to operate as a writ of restitution, a writ which the court could not grant, under the allegations and prayer of the bill. The deed was done, and there remained nothing on which the writ of injunction could operate. An injunction is understood to be a preventive remedy merely, and cannot be so framed as to command a party to undo what he has done. The very terms of the writ indicate its purpose, that is, restraint. It is described as a judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ, the most common sort of which operate as a restraint upon the party in the exercise of his real or supposed rights, and is called the remedial writ of injunction. The other sort, requiring a party to do a particular thing, is sometimes called the judicial writ, and only issues after a decree has passed, and is in the nature of an execution to enforce it. 2 Story's Eq. Jur. sec. 861.

It is further said, in the same treatise, that the object of this process is generally protective and preventive, rather than restorative, though, by no means confined to the former.

It is under this last branch of the definition appellee relies, to sustain this proceeding. His counsel say, the only point properly presented by the record is, whether a court of chancery will restrain, by injunction, an insolvent person, who, by brute force, with weapons, is molesting a party in the peaceable and lawful possession of his property, until the rights of the parties can be settled at law.

It is unfortunate for the appellee, that his bill of complaint contains no allegation that proceedings at law have been, or are about to be, instituted, to try the respective rights of these parties to the premises, nor is there any allusion whatever to any such proceedings. It is a naked bill for an injunction to restrain appellants from doing the acts which the bill alleges they have done. There is no prayer that appellants shall be turned out of possession and appellee put in. The facts stated

disclose nothing more than a simple case of trespass, by a forcible entry and detainer, the remedy for which is ample at law, and fully adequate. It has often been held by this court, that a party can have no footing in a court of equity when he has an adequate remedy at law. *Winkler* v. *Winkler et al.,* *supra.*

The point made by appellee is disposed of by saying, that, in a proper case, a court of chancery will restrain, by injunction, any person who, by brute force, with weapons, is molesting a party in the peaceable and lawful possession of his property, provided the rules of law, in their application to the case, shall afford him no adequate remedy. But that is not this case. There is no charge in the bill, that appellants are molesting appellee in the enjoyment of his property. The acts charged are past and done, and the prayer is, that they be restrained from doing them. As well might A, whose dwelling house has been entered by a trespasser during the temporary absence of the family, apply for an injunction to restrain him from doing such an unlawful act. We think the books will be searched in vain for a precedent of that character. It is urged by appellee, where a trespass is like to be repeated, and the party is insolvent, or adequate damages cannot be estimated in money, an injunction is proper, and in this connection says, that injunctions to prevent forcible dispositions of possession were common at one time in England, referring to 2 Story's Eq. Jur., secs. 869–70. By turning to sec. 869, it will be seen that the author is treating of cases wholly different from this. He says, "in the early course of chancery proceedings, injunctions to quiet the possession of the parties before the hearing, were indiscriminately granted to either party, plaintiff or defendant, in cases where corporeal hereditaments were the subject of the suit, the object of them being to prevent a forcible change of possession by either party, pending the litigation." In the next section, 870, the author says, "the practice of granting injunctions of this sort has become obsolete in England, if not altogether, at least in

so great a degree that there are few instances of it in modern times. But injunctions in the nature of an interdict, *unde vi*, of the Roman law, to restore a possession from which the party has been forcibly ejected, are, under the name of possessory bills, said to be still common in Ireland."

The proceeding before us is of this character, and is in the nature of an interdict *unde vi*, but there is no precedent for it in the American or English courts, and, we may add, no necessity for it. Again, counsel for appellee say, that courts of equity interfere in cases of trespass, to prevent irreparable mischiefs, or to suppress multiplicity of suits and oppressive litigation, in cases of cutting timber, digging in mines, coal beds, quarries, and the like. That is all true, and the restraining power of chancery is often successfully invoked in such cases, but no case can be shown where the trespasser was required to put back into the quarry or mine, or coal bed, the material he had taken out.

The counsel further say, that mill operators are protected from molestation in their business, for the same reason that miners are protected, because it is impossible to estimate their losses and profits, and irreparable injury is done to the operator and to the public, and Hilliard on Injunctions, 448, is referred to. The author is there treating of the rights of mill owners on the same stream of water, and the power of a court of chancery to enjoin a nuisance,—cases quite different from the one we are considering.

Reference is also made by appellee to a case decided by this court, in support of the injunction. It is the case of *Brunnenmeyer et al.* v. *Buhre et al.* 32 Ill. 183. That was a case in which a difficulty had arisen in a religious society of which Brunnenmeyer was one of the trustees, and Buhre the pastor. This trustee, with one of his co-trustees, Fickensher, locked up the church building, to the exclusion of the pastor and those members of the church who desired to retain him in that position. There was, subsequently, an election of trustees, by

a majority of the members, and the pastor was retained in their service.

The church being locked up by Brunnenmeyer, the pastor, Buhre, with other members of the church, and on behalf of the church, exhibited their bill in chancery, against Brunnenmeyer and others, for an injunction, setting out their title to the church property, and praying for an injunction to restrain the defendants from interfering or in anywise intermeddling with the complainants and members of the church in convening and worshipping according to its usages and customs, as they had theretofore done.

The defendants admitted the charge of locking up the church to protect the property in it, alleging it was done upon proper authority, setting out the facts. The court, on final hearing, made the injunction perpetual, and on appeal to this court the decree was affirmed, the court holding the church was trust property, and that the defendants were not warranted in closing it against the complainants, thereby depriving them of the use of it for purposes of worship. It was urged in that case, that the act complained of was already performed, and there was nothing to restrain, but the court said it was not like a simple act of trespass—it was of a continuing nature, and designed to deprive complainants of their rights in the future as well as in the past, and to prevent this continuing injury and deprivation of right, the court had the authority to interpose by its restraining power, and to grant preventive relief, to the same extent that it could to prevent a single injurious act.

It is apparent in this case that the rules of law furnished no adequate remedy for the injury of which complaint was made, as no action of forcible entry and detainer would lie, while in the case at bar, one of the most simple remedies known to the law, and fully adequate, was open to the appellee.

The case of *Goodnough* v. *Sheppard*, 28 Ill. 81, cited by appellee, was a case of the ordinary exercise of the powers of the equity court to restrain an officer from disturbing a man

in possession, who was not a party to the judgment or named in the execution, and who did not claim through any of the litigating parties. The ground of that decision is, that a person in the quiet possession of real estate as owner, may have an injunction to restrain others from dispossessing him by means of process growing out of litigation to which he was not a party, a case of very frequent occurrence.

The case of *Webber* v. *Gage*, 39 N. H. 182, is referred to, as sustaining this injunction. That was a case where the complainant had enjoyed an easement to his saw mill for forty years, and the defendants were restrained from obstructing it or closing it up.

Among the numerous cases cited by appellee we do not find one where an injunction was awarded after the act was done, or to put a party in possession of real estate on a bill to restrain *tort-feasors* from entering upon the estate. If, on a bill for such purpose, it should be found the wrong-doers are in actual possession, they would not be held as in contempt in maintaining such possession by force. The case of *The People* v. *Simonson*, 10 Mich. 335, is on this point. The proceedings were for a contempt. The complainant, Van Ness, was put in actual possession of certain premises under a lease from Wapler, who had obtained a writ of possession against Simonson. On the same day he was put in possession, he was put out with all his effects by Simonson. The injunction was served a few days after, and the next day Van Ness undertook to enter the house, but was prevented by Simonson, who, with the other respondents, continued to keep him out. It was for this the attachment issued against the respondents, Simonson and others, to answer for a contempt in disobeying the injunction.

The court say, when the bill was filed, and ever since, Simonson and the other respondents under him have had the actual possession of the premises, and their acts, during this period, have consisted only in endeavor to maintain it. This being the case, the court say the injunction has not been

violated, for it was issued to preserve an actual possession against molestation, and not to oust a possessor who may have been a tortious holder. No court can, by a preliminary *ex parte* order or process, turn even a wrong-doer out of possession, and we cannot presume that the writ in the case before us was designed to have any such operation.

In these views we fully accord, and as it is a case in many respects identical with the one before us, we must hold, as in that case, that as the injunction was allowed in this case, the wrong-doers being in possession of the premises when the bill was filed, they could not be turned out of possession by such a writ.

Even in cases of nuisance, equity will not exercise jurisdiction to remove it, until it is found to be such by a jury, either in an action at law or on an issue out of chancery, and with an erection which, if made, might be a nuisance, a court of equity would not interfere, but would leave the injured party to his action on the case. *Dunning* v. *The City of Aurora*, 40 Ill. 481.

This bill is brought, evidently, to recover possession of the mill, and is, what may be called, an ejectment bill, and such a bill is demurrable, the redress being at law, either by action of ejectment, trespass *quare clausum fregit*, or by the more summary mode, by the action for forcible entry and detainer. Story's Eq. Pl., sec. 476.

A case similar, in some respects, to this, as the bill alleged an unlawful and violent entry into the premises, withholding their use from the complainants, and depriving them of their support and maintenance from the land, and that the defendant was insolvent, and praying that the defendant be enjoined and compelled to surrender the premises, and that a receiver be appointed, is reported in 14 Maryland, 376, *Pfeltz et al.* v. *Pfeltz et al.* There it was held the facts charged in the bill did not show defendant was committing irreparable damage to the property, to prevent which an injunction was necessary. That court considered the object of the proceeding was to

obtain possession of the land, and presented a case proper for redress at law, and reversed the judgment of the circuit court granting an injunction.

The only material difference between that case and this, is, that complainant, in his bill, charges that by the forcible entry and taking possession of the mill, he has been deprived of the use of the mill, and of large gains and profits therefrom, whereby he has suffered irreparable injury and damages for which he has no adequate remedy at law.

No damage to the premises is alleged, nor is there any statement in the bill from which such an inference can be drawn, and it is usually for such irreparable damages an injunction can be allowed, and then only for purposes of prevention. The injunction is a preventive remedy. It comes between the complainant and the injury he fears or seeks to avoid. If the injury be already done, the writ can have no operation, for it cannot be applied correctively, so as to remove it. *Att'y Gen.* v. *New J. R. R. & Trans. Co.*, 2 Green's Ch. R. 136.

We may add to this, that it is at the same time a fetter and a shield, not a weapon to pierce.

The record in this case, further shows, that the appellants, refusing to surrender possession of the mill, on the service of the writ of injunction, an attachment for the contempt was issued against them, returnable before the judge at chambers, which coming to the knowledge of the defendants, they surrendered the possession to the sheriff, and no further proceedings were had on the attachment.

Under these circumstances, and as the injunction was wrongfully sued out, and as, by it, or through the instrumentality of proceedings under it, the defendants have been deprived of the possession of the mill, and which, for aught we know, may be their rightful property, we deem it but just that a writ of restitution should issue to restore to them the possession of the premises. In the ordinary action of ejectment, when, upon the recovery by the plaintiff, a writ of

possession issues in his favor, upon a new trial and recovery by the defendant, a writ of restitution issues in his behalf, so in this case, appellants having been deprived of the possession by the action of the circuit court, and which we have considered as unauthorized, it is but just and equitable they should be restored to the position they occupied at the time these proceedings were commenced, and complainant remitted to his action of ejectment, or forcible entry and detainer, to recover the possession. He must be the actor in such a proceeding, and not appellants.

Upon the point made by appellants, that the court proceeded to a decree on overruling the demurrer, there was no irregularity in that, as the record shows the defendants elected to abide by the demurrer, and if they had not so elected, it was not necessary the court should have ruled them to answer, but could proceed at once to a decree. *Roach* v. *Chapin,* 27 Ill. 194. The error is in the decree itself, having been rendered on a bill void of equity.

The decree must be reversed and the cause remanded, with directions to the circuit court to award to appellants a writ of restitution of the premises in the bill described, if the same should be moved for by them.

*Decree reversed*