## The Rio Grande Railroad Co. v. City of Brownsville.

1. PRACTICE IN SUPREME COURT.—In the absence of an assignment of errors, the Supreme Court will in its discretion either dismiss or consider and decide such errors as are apparent on the record, going to the foundation of the action. The court will not consider mere technical errors in the form or manner of enforcing a valid cause of action, of which the court below had jurisdiction, nor rulings made in the progress of the trial not going to the foundation of the action or of the defense.

2. POWERS OF A CORPORATION.—A corporation has only such power as has been conferred on it by its charter, or with which it has been otherwise empowered by law.

3. PUBLIC STREETS.—It seems that the injury from obstructing streets is to the general public, rather than to the city; but when the control of the streets has been conferred upon the city, it may institute proceedings to remove obstructions.

4. CONSTRUCTION OF CHARTER.—A charter authorizing the construction of a railroad "to Brownsville, on the Rio Grande," is not to be restricted to the right to build the road to the limits of the city, but it imports an authority to extend the road within the corporate limits of the city.

5. CONSTRUCTION.—The words "*at*" and "*from*" are correlative with "*to*," as showing the points from and to which a road may be constructed; and if the first may be used inclusively, so may the latter.

6. RAILROADS MAY USE PUBLIC STREETS.—The right is expressly conferred by law upon all railroad companies chartered by the laws of this State to use any of the public streets, alleys, and highways of any city or town which may be on their lines of road, without making such city or town any compensation. (Paschal's Dig., art. 4941.)

7. SAME—HOW SUCH RIGHT MAY BE ENFORCED.—In case of disagreement between a railroad company and the city authorities as to what street should be occupied by such railroad, it was the duty of each to invoke the aid of the State engineer, or other person to be appointed by the Governor, to designate the street to be taken by the railroad. (Paschal's Dig., art. 4937.)

8. Same—Repeal of city ordinance.—The city authorities, after having granted consent to a railroad company to use a certain street, cannot, by revoking the city ordinance granting such authority, deprive the railroad of its right to use such street, if, prior to the repeal, the railroad had made expenditures on the strength of the consent.

Appeal from Cameron.    Tried below before the Hon. W. H. Russell.

The facts are fully stated in the opinion.

*E. J. Davis,* for appellants.

This is a case of an injunction granted at the suit of the city of Brownsville, against the Rio Grande R. R. Company in regard to the use of a street in that city for the railway. The injunction, on hearing of the case, was made perpetual.

There is no assignment of errors in the record of this case, but it is a case where the errors of the lower court are apparent from the record, and go to the foundation of the right to sue, of plaintiff, (appellee.)

It seems that the city corporation, on August 7th, 1871, by ordinance, granted the railroad the right of way on any one of the streets it might select, including the Levee street to the river.    Afterwards, in January, 1873, and when the railroad was about building its road along the street it had selected, the corporation repealed its aforesaid ordinance, and thereupon, the railroad having disregarded the repeal, applied for this injunction.

The court below was clearly in error in granting and making perpetual this injunction.    There may be some doubt whether the city council, without legislative permission, could grant the use of any of the streets to the railway, but it clearly could by permission of the Legislature of the State. (See 2d Dillon on Municipal Corporations, secs. 555 to 564; 29th Ills., 279, 289, and numerous cases cited.)    The Legislature of Texas, by sections 16 and 17 of act of April 10, 1858, gave this permission, and even authorized the right of

way without consent of the corporation.   The reasons given
by the corporation for withdrawal of their consent are flimsy;
and it is suggested that this withdrawal was a mere nullity,
as they had no warrant of law or fact for their action.

No counsel for appellee.

Moore, Associate Justice.—The importance of the ques-
tions involved in this case would have well justified a more
thorough and careful preparation of the record than it seems
to have received.   The judgment entry recites that the motion
to dissolve the injunction was submitted to the court on affi-
davits, and that the case on its final hearing was decided by
the court—a jury having been waived—"on the petition, an-
swers, affidavits, and evidence offered" by the parties.   Yet
neither the affidavits nor the matters deposed to in them are
incorporated into or made part of the statement of facts.
There are a number of affidavits copied in the transcript, but
they are in no way identified, so as to warrant our saying
that they are the same referred to in the judgment entry.
The appellant has omitted to file an assignment of errors,
and no appearance is made in this court for appellee.   The
case consequently has been submitted by appellant without
an assignment of errors, and without objection to it on this
account by appellee.

It is the practice of the court when cases are thus submitted
to exercise its discretion, and dismiss them for want of an
assignment of errors, or to consider and decide such errors
as are plainly apparent on the face of the record, which go
to the foundation of the action.   We think the ends of justice
will be best subserved by taking the latter course in this
case.

By the judgment, appellant is perpetually restrained and
enjoined from any further construction of its road in and along
any of the streets and alleys of the city of Brownsville, from
appropriating or attempting to appropriate any of said streets

or alleys to the use of its railroad, and from running any locomotive or railroad car over or on any of the streets or alleys within the limits of said city, as set forth in appellee's petition.

The grounds upon which appellee's action is founded, and upon which the judgment is rendered, are, 1st. That appellant was only by its charter "to construct its road as far as the city limits of the city of Brownsville." 2d. Said company had no authority to come within the limits of the city of Brownsville; and in assuming the right to do so, it was acting in defiance of the ordinances of the city. That no agreement had been made by appellant with appellee for such appropriation of said streets and alleys, nor had appellant paid or offered to pay appellee anything for such privilege.

If it plainly appears from the record that the judgment cannot be supported upon either of these grounds, it has no foundation upon which to rest, and must be reversed, notwithstanding appellant's failure to file an assignment of errors. It is to be observed, however, that the judgment will not be reversed in such case for mere technical errors in the form and manner of enforcing a valid cause of action of which the court has jurisdiction, or in the rulings of the court on questions arising during the progress of the trial, which relate to the enforcement and maintenance of the action or defense, and which do not go to its essential foundation and merits.

A corporation being a mere creature of law is endowed with and can lawfully exercise only such powers and functions as are conferred upon it by its charter or with which it has been otherwise empowered by law. If, therefore, appellant was only authorized to construct its road to the limits of the city of Brownsville, by its entry within the city and location and construction of a portion of its road in and along its streets, and digging up and defacing the same, so as to appropriate them to its use, thereby blocking up and obstructing their use by the general public, it has unquestionably been

guilty of a trespass, and subjected itself to the penalty of the law. It seems to be the better opinion, however, that it is the general, rather than the local public, to whom the streets and other public places belong. And therefore whether the technical fee be in the adjoining owner, in the original proprietor, or in the municipality, in trust for public use, any unauthorized obstruction of the public enjoyment is an indictable nuisance or a wrong for which relief may be had by the proper officers of the State in its name, by bill in equity for injunction, or by other appropriate action or proceeding. (Dill. Municipal Corp., sec. 520.)

But it has been held that when the power and authority to control and surpervise its streets is conferred on the municipal corporation, it may, in its corporate name, institute appropriate judicial proceedings to prevent or remove such obstructions. (Id.) And as it does not plainly appear that such power is not conferred by its act of incorporation on appellee, we cannot say that it has not the right to institute and maintain in its corporate name a suit of this character.

Whether the facts alleged in the petition show that ample remedy for the alleged injury cannot be had at law, or justify the interposition of a court of equity and the granting of a writ of injunction, would, perhaps, present a more serious question, if the case was before us on an assignment of errors. (Dunning *v.* Aurora, 40 Ill., 481; Higbee *v.* Railroad Co., 20 N. J. Eq., 435; Railroad Co. *v.* Pruden, Id., 530; White *v.* Flannigan, 1 Md., 525; Elwell *v.* Greenwood, 26 Iowa, 377; People *v.* Vanderbilt, 26 N. Y., 287.)

But taking it for granted that the city of Brownsville may maintain a suit in its corporate name against appellant for obstructing its streets by appropriating and using them to construct a part of its road within said city, when, by its charter, it has no authority to extend its road within the city limits, and that the acts complained of are of a character which, if wrongfully done, a court of equity should restrain by injunction, it still remains to be seen whether appellant

was only authorized by its charter to construct its "road as far as the city limits of said city of Brownsville."

The record does not show that the charter of appellant was before the court on the hearing of the case; and as it is a private act, we cannot take judicial knowledge of its contents. The section of the act defining the line of the road and fixing its terminus is set out in appellant's answer, but as the answer is not under oath, we attach no weight to it, and we will look merely to the admissions in appellee's petition to determine whether, under its charter, appellant had authority to extend its road within the city.

It is alleged in the petition "that by an act of the Legislature of the State of Texas, approved August 13, 1870, the said Rio Grande Railroad Company was incorporated and declared a body politic and corporate, and invested by said act with the right, power, and authority to construct, equip, maintain, and own a railroad and telegraph line from Point Isabel, on Laguna Madre, to Brownsville, on the Rio Grande." And it is from this admitted grant of authority to construct a road to Brownsville, that appellee alleges, as an inference or conclusion, that appellant has authority to construct its road only to the limits of said city. But is this inference correct? Do the premises justify or warrant the conclusion? We think not. In forming our opinion we leave out of consideration the fact that Brownsville is designated in the charter as on the Rio Grande, and that it might be argued that it is shown thereby that the road was intended to go to the river. We put our conclusion upon the broader proposition that the authority conferred on appellant by its charter to construct a railroad and telegraph to Brownsville does not fix the terminus of its road at the limits or boundary line of the city, but imports an authority to extend the road within its corporate limits. When a charter to construct a road is granted, previous to the designation of its line of survey, it can hardly be supposed that the Legislature intended to define its precise line or fix the exact point of its termini

by mere words of general description. If such is the intention, it should be clearly and unmistakably manifested by the language used in the charter. The words "to Brownsville" certainly do not fix a precise and exact point to which the road shall be constructed, if we construe them to refer to the exterior limits of the city, any more definitely than if we say it may be extended within its limits. Though it cannot extend beyond the exterior line of the city, still, if appellant may select its terminus at any point on the boundary of the city it may choose, we cannot hold that the charter should have the construction contended for by appellee; because thereby a limitation is imposed upon the power which it is said is otherwise given to appellant of selecting the point at which its road shall terminate. Nor does our legislation on the subject indicate that it is the policy of the State that works of internal improvement of this character should only be extended to the exterior limits of our towns and cities to and by which they go. On the contrary, in many instances railroad companies are absolutely required to build their roads through and into the towns and cities on their line and at their termini. (Paschal's Dig., arts. 4936, 4937, 4941.)

When one says that he is going to a particular city, no one understands that he is merely going to its exterior limits. And when the Legislature says a company may build a railroad to the same place, we see no reason to infer that its language should not receive the same general and popular construction, and so it has been often held. In the case of The Farmers' Turnpike Company *v.* County, 10 Johns., 388, which was an act of incorporation authorizing the plaintiff to make a turnpike road "from Troy to city of Hudson," it is said that this did not mean that the road was to terminate on arriving at the boundary of the city. And in the case of The Mohawk Bridge Company *v.* The Utica and Schenectady Railroad Company, 6 Paige, Ch., R., 554, the words "commencing at or near the city of Schenectady" were construed to mean at or within the city. (Smith *v.* Hilmer, 7 Barb. Sup.

Ct. R., 416; Commonwealth *v.* Erie and Northeast R. R. Co., 27 Penn. St. R., 354.) The words "at" and "from" are correlative with "to," as showing the points from and to which a road may be constructed; and if the first may be construed inclusively, so may the latter.

If appellant is authorized by its charter to construct its road within the limits of the city, does the second ground of action presented by appellee's petition authorize or justify the judgment?

The right is expressly conferred by law upon all railway companies chartered by the laws of this State to use any of the public streets, alleys, and highways of any city or town which may be on their lines of road, without making such city or town any compensation therefor. (Paschal's Dig., art. 4941.)

The fact that appellant had not paid or proffered to pay appellee for the use made of the street was, therefore, immaterial. Certainly it must be so regarded, unless facts were stated from which it appeared that the city would sustain some special damage not within the contemplation of the law. Nor is the right to use the streets dependent upon the consent and agreement of the city.

The most that can be claimed for appellee is that appellant should have endeavored to agree with the authorities of the city upon the street or streets to be used by it before commencing to construct the track of its road within the city limits; and in case no such agreement could be had, that appellant had caused the street upon which it had located its track to be designated by the State engineer, or some other person appointed by the Governor for that purpose. (Paschal's Dig., art. 4937.) But it seems to be equally incumbent upon the authorities of the city as on the railway company, if they oppose the use of any particular street by the company, to make application to the Governor to cause the street or streets to be used by the company to be designated. It would seem, therefore, that the mere allegation that appellee had not given its consent to the use of the street by

appellant would be altogether insufficient to justify an appeal to a court of equity for a writ of injunction. Not only because it is not alleged that the street so used by appellant may not have been designated by the State engineer, by reason of appellee's refusal to consent to its use; and if this was not the fact, that appellee was given by the statute a more speedy and adequate relief than by an injunction.

But, in addition to this defect in the bill, it plainly appears from the statement of facts that appellee had consented to the use of its streets by appellant. This was not denied. The ground upon which appellee relies is not that it had not given its assent to the use of its streets by appellant, but that it had subsequently withdrawn and revoked such consent. There is nothing in the statute authorizing the authorities of the cities and towns, after agreeing with railway companies as to the point or points at which the latter may construct their roads, to withdraw from or annul such agreement at their option. That they have agreed to let the company make its own selection would not seem to alter the case. If they may revoke such consent, which, however, we are not called upon to decide in this case, it should appear it was done, and notice of it given the company before any action was had or expenditure was made on the faith of the consent or agreement. But nothing of the kind is alleged in the petition, or has been shown by the evidence. On the contrary, the inference to be drawn from the bill itself is, that appellant must have designated and surveyed its line, and had, probably, commenced work within the city limits before the repeal of the ordinance authorizing it to make its road on any street it might select, as shown by the statement of facts. If so, the repeal of the ordinance granting appellant the privilege of selecting and appropriating any of the streets and alleys of the city it chose, was clearly inoperative and void.

Reversed and remanded.

Mr. Justice Ireland did not sit in this case.