SMITH, PLAINTIFF IN ERROR, v. THE PEOPLE, DEFEND-
ANTS IN ERROR.

1. VENUE—REAL ACTIONS.

It is provided by sec. 25 of the Civil Code that an action involving real estate shall be tried in the county in which the land or some part thereof is situate.

2. VENUE—JURISDICTION.

If such an action is brought in the wrong county, the court cannot retain jurisdiction after motion in apt time by the defendant to change the place of trial to the county in which it ought to have been commenced.

3. CHANGE OF VENUE A PRIVILEGE—JURISDICTION.

The right to a change of place of trial in an action commenced in the wrong county is a privilege which may be waived, but when properly demanded, it divests the court of jurisdiction to proceed.

4. DISQUALIFICATION OF JUDGE.

The fact that the judge of the district court of the proper county is disqualified to try the case is not a warrant for commencing an action in the wrong county, neither does it authorize the court in which it may be improperly commenced to retain jurisdiction.

5. DISQUALIFICATION OF JUDGE, WHEN CAUSE FOR CHANGE OF VENUE.

The disqualification of a district judge is never a cause for changing the place of trial, except when a competent judge of another district cannot be procured to appear and try the action.

6. MANDATORY INJUNCTION WITHOUT NOTICE, VOID.

A mandatory writ of injunction issued without notice is absolutely void.

7. DISOBEDIENCE OF VOID WRIT NOT A CONTEMPT.

A failure or refusal to obey a void writ of injunction does not constitute a contempt of court.

8. IRREGULAR AND VOID WRITS, DISTINCTION BETWEEN.

There is a well defined distinction between a writ of injunction improvidently or erroneously issued by a court having jurisdiction, and one issued by a court without it. In the one case the writ must be obeyed implicitly, no matter how improvidently or erroneously issued; in the other the writ is absolutely void, entitled to no respect and demanding no attention.

*Error to the District Court of Arapahoe County.*

IT appears that some time prior to the year 1882 (date not shown), three individuals, Leese, Davis and Bingel, construct-

| | |
|---|---|
| 2 | 99 |
| 3 | 353 |
| 2 | 99 |
| 4 | 492 |
| 2 | 99 |
| 8 | 162 |
| 23c | 222 |
| 2 | 99 |
| 11 | 348 |
| 12 | 546 |
| 25c | 36 |
| 2 | 99 |
| 17 | 240 |
| p17 | 243 |
| 30s | 129 |
| 31s | 467 |
| 2 | 99 |
| 37S | 92 |
| 37S | 421 |

ed a small ditch some five miles long to convey water to irrigate their separate farms. Such ditch was taken out of the Rio Grande river in Rio Grande county, and was known as the "Bingel" ditch; that they remained the owners of the ditch until some time prior to December, 1882, when they sold and transferred the ditch and water rights to one J. S. Stanger, who at once proceeded to reconstruct and enlarge the ditch, using the Bingel ditch and right of way, taking the water from the same point and putting in a headgate at the point where the headgate of the Bingel ditch had formerly been.

Plaintiff in error and his partner, John M. Wilson, were employed by Stanger in enlarging and reconstructing the ditch. Stanger being indebted to them in the sum of $9,432.33 and failing to pay, they, in April, 1884, obtained a judgment for that amount against Stanger and for costs, which was by the court decreed to be a lien upon the Leese, Davis and Bingel ditch. Pursuant to such judgment and decree, all the right, title and interest of Stanger was sold by the sheriff and purchased by one Engley about the 1st of March, 1886. The sheriff made a deed of the interest sold to Engley, that Engley conveyed to plaintiff in error, and he became the owner of whatever interest passed by virtue of the sheriff's sale.

It also appears that a corporation known as "The State Land No. 2 Canal Company," during the time the foregoing proceedings were being had, came into possession of the five miles of canal reconstructed and enlarged by Stanger, as his successor, and used it as the head or upper part of a long and extensive canal and water system by it constructed from the lower end or terminus of the Stanger construction, the whole system being continuous; and the "Empire Land & Canal Company" succeeded to the rights of the State Land No. 2 Canal Company, and went into the possession, connecting it at its southeast terminus with the canal and water system of such Empire company and making the system continuous, the water being taken through the headgate and

canal of the Stanger, formerly Leese, Davis and Bingel portion.

Prior to April, 1889, (date not given) the Empire Land and Canal Company instituted a suit against plaintiff in error and others in the district court of Rio Grande county, setting up its title to the five miles of ditch in controversy, as owner, alleging the proceedings and sale whereby plaintiff acquired his pretended title, were void. That the deed executed to Engley and conveyance by Engley to plaintiff were a cloud upon its title, and asking its removal. Issues were made up and a trial had upon the merits, resulting in a decree for plaintiff in error (defendant) on the 15th of April, 1889, that he was the owner and that the suit be dismissed. The Empire Company prosecuted an appeal from the decree to the supreme court, where the matter is still pending. Upon the entering of the decree and dismissal of the suit in the district court, plaintiff in error took possession of that portion of the ditch claimed by him, including the headgate; evicted the Empire Canal Company and forcibly retained the possession, no supersedeas having been granted by, nor application having been made to the supreme court for an injunction.

While matters were in this situation the Empire Canal Company filed an original bill in the district court of Arapahoe county, averring its title to the property, and narrating the facts above stated, praying:—

First.—That defendants be enjoined "from interfering with plaintiff's control and enjoyment of the said headgate of the said Empire Canal; from in any way obstructing the flow of water in said canal, either at the headgate or at any other point on the canal; and from interfering with the operation of said canal by the plaintiff in any respect whatever."

Second.—"Enjoining and restraining the defendants * * * from interfering, keeping or maintaining their possession of the property of the Empire Land & Canal Company, its headgates or any part of its canal as above mentioned; and from keeping in their or either of their possession the

keys to the headgates * * * and from keeping the said plaintiff company or any of its agents or employees from the full and entire possession of all the canal and property of the said canal company * * *." In response to such prayer, a preliminary injunction was issued—without notice to defendants—mandatory in character, following the wording of the prayer, commanding, in effect, the defendants to deliver the possession of the portion of the canal by them held, the headgate, keys, etc., to plaintiff company. The writ was served and disregarded by defendants, who were at the time engaged in constructing a dam across the canal a short distance below the headgate, to prevent water from flowing in the canal, also, in cutting through the bank of the canal at a point above the dam to turn out and into the river whatever water passed in through the headgate. Such work was continued and completed some 36 or 48 hours after the service of the writ, and at the time and subsequently, possession of that portion of the canal, the headgate and keys were retained by the defendants.

The bill appears to have been filed and order for the injunction made on April 23, 1889; the writ served upon Smith on April 24th; on the 25th a demurrer for want of equity was filed to the complaint, and on the same date the following motion was filed:

"Come now the defendants and move the court to change the place of the trial of this cause to Rio Grande county, Colorado, for the reason that it appears upon the face of the complaint, that this is an action for the determination of rights and interests in and injuries to real property situate in said Rio Grande county." No action was taken upon the motion. No proceedings, charging the defendant, Smith, with contempt in violating the injunction, were instituted until May 2d, when affidavits having been filed charging the contempt, an order was made requiring the defendants to appear on May 4th. Defendants appeared and answered. Afterwards, a mass of oral testimony was taken, mostly going to the merits of the controversy as to the rights of the respective parties to

the property in dispute.   On the 8th of May the defendant, Smith, was adjudged guilty of contempt and fined $250, to be paid within 24 hours, and in addition thereto the following was made a part of such judgment:

" And it is further ordered by the court, that the said Daniel R. Smith, defendant, within three days from this date, remove the dam and all obstructions by him placed in the canal of the said plaintiff mentioned in said order, and repair the bank of the said canal by him cut as aforesaid, and in all things restore the said canal and the property which was heretofore in possession of the said plaintiff to the like condition it was in when the defendant took possession thereof; and that the defendant, Daniel R. Smith, and all the defendants, their agents, attorneys and employees, immediately obey the orders of said court heretofore issued, and that in the event the defendant Smith fails to restore the said canal and property of the plaintiff to the same condition, as near as may be, that it was in when he took possession thereof, within three days from the date of this order, the defendant, Smith, be arrested and committed to the jail of the county of Arapahoe, state of Colorado, there to be confined until the order of said court heretofore issued herein shall in all things have been fully obeyed and complied with."

Mr. C. A. JOHNSON, Mr. ADAIR WILSON and Mr. D. V. BURNS, for plaintiff in error.

Mr. J. H. MAUPIN, attorney general, for defendants in error.

REED, J., after stating the facts, delivered the opinion of the court.

Preliminary to the discussion of supposed errors as assigned and presented by counsel, arises a question, novel in character, but seemingly of great importance, or rather several questions.

First. The district courts of Rio Grande and Arapahoe counties being courts of equal and concurrent jurisdiction, and the right of the parties and the title to the property having been adjudicated and a final decree entered in the district court of Rio Grande county—were not the matters, as far as district courts were concerned, *res adjudicata?* After the final decree, from which an appeal was taken to the supreme court, such decree could not be vacated nor the decreed rights of parties affected but in one of two ways. First, by the setting aside of the decree and granting a new trial in the trial court; second, by a reversal of the decree in the supreme court; neither of which had been done. By entertaining the bill presented and proceeding to grant equitable relief by injunction, the district court of one district assumed the power to review the findings of a court of concurrent jurisdiction in another district; for the right to equitable relief must have been determined upon the same facts adjudicated in the other court, consequently, a different finding must be predicated upon the facts already adjudicated. It cannot be said that the district court of Arapahoe county assumed jurisdiction in ignorance of these facts, for they are stated in the complaint, where, after stating the premises and institution of the suit, it is said : " That upon issue being joined by the defendant in the said suit, the trial of said case was had at the last term of the district court of Rio Grande county, holden at Del Norte on or about the 15th of April, 1889, and that the said court after hearing the said case, rendered a decree dismissing the bill of complaint of the said plaintiff * * * from which decree the Empire Land & Canal Company has appealed to the supreme court."

Previous to such appeal, jurisdiction of the subject-matter in controversy was in the district court of Rio Grande county. By the appeal the district court of Rio Grande county was divested of jurisdiction and it was vested in the supreme court, which had full and sole power to grant relief by supersedeas, injunction or otherwise. The question is not presented for determination, nor will it be definitely determined.

By the bill of complaint it was shown that the property in controversy was real property situate in Rio Grande county.   On the 25th of April, two days after presenting the complaint, a motion was made to change the venue to that county.  The motion was filed some days before the proceeding for contempt was instituted, was not disposed of, and as far as shown by the record, remains undisposed of. If prior to that time the court had jurisdiction—was it not by such application deprived of all jurisdiction to proceed ?

By sec. 25 of the Civil Code it is declared that such actions shall be tried in the county in which the subject of the action, or some part thereof, is situated.

It was apparent upon the face of the complaint that it pertained to real property in Rio Grande county, hence, that the district court of Arapahoe county could not retain jurisdiction for adjudication after the motion to change was made. We are satisfied that this is a correct construction of the statute, and this conviction is strengthened by the construction of the same and similar statutes in other states.  See *Veeder v. Baker*, 83 N. Y. 156; *Bonnell v. Esterly*, 30 Wis. 549; *Woodward v. Hanchett*, 52 Wis. 482; *Meiners v. Loeb*, 64 Wis. 343; *Watts v. White*, 13 Cal. 321; *Cook v. Pendergast*, 61 Cal. 72; *Heald v. Hendy*, 65 Cal. 321.

We can find no case in our own courts where the point has been decided.   The nearest approach to it was in *Fletcher v. Stowell*, 17 Colo. 94, but the question presented in this case was not involved.   Suit was brought in Lake county to foreclose a mortgage on real property in Eagle county.   Defendants made no appearance and a decree of foreclosure was taken by default and sustained, the court holding that it was not incumbent upon the court to change the case to Eagle county of its own motion, and that the right to a change was waived by a failure to appear.   In this case there was an appearance and a motion.  Nothing in that case militates against the position taken here.   The district courts being courts of general jurisdiction, the case would be retained unless the defendant asserted his right to have it tried in the.

proper county. The right to change is a *privilege*. It may be waived, but when asserted, the statute is peremptory, and the court has no jurisdiction to proceed, and all further acts will be void. To hold otherwise would abrogate the statute.

In sec. 29 of the Code it is provided that the court "may change the place of trial when from any cause the judge is disqualified to try the action;" but it is also provided, "the court shall not change the place of trial for the disqualification of the district judge in any case where a competent judge of another district court will appear and try the action." An affidavit was filed in the district court of Arapahoe county, stating that the district judge of Rio Grande county had been of counsel, but this was an unwarranted proceeding, there being no provision in the statute for conferring jurisdiction in that manner. It could only be effective by the application having been made in the county where, by the requirements of the statute, the case could properly be tried. Then there could be no change to another forum if a competent judge could be procured.

III. In addition, the writ of injunction was void for want of notice and jurisdiction of the defendants, even if it had had jurisdiction of the subject-matter of the controversy. The application was *ex parte*, the relief granted, a mandatory injunction directing a delivery and change of possession of real property and directing other acts to be performed, it was a judgment or decretal order, frequently called "a judical writ," that could only legally follow a final judgment or decree. A final judgment and decree had been entered by the district court of Rio Grande county, but finding the defendant to be the owner. Such decree carried with it the right of possession and the right of entry—could only be stayed by injunction or a supersedeas from the supreme court, which had jurisdiction by the appeal. The acts of the district court of Arapahoe county in assuming jurisdiction and issuing the mandatory writ were, in effect, the assumption of the powers of the supreme court to review the proceedings of the district court of Rio Grande county,

which it exercised without notice to the defendants, *ex parte*, reviewing and reversing the decree of a court of concurrent jurisdiction and without adjudication changing the possession. That a mandatory writ of the character issued in this case can only be a legal writ when based upon a judgment or decree, unless authorized by statute, has been so frequently held, it is hardly necessary to cite authorities in this support.

In Story's Eq. Juris. § 861, it is said : " The most common form of injunctions is that which operates as a restraint upon the party in the exercise of his real or supposed rights; and is sometimes called the remedial writ of injunction. The other form, commanding an act to be done, is sometimes called the judicial writ, because it issues after a decree, and is in the nature of an execution to enforce the same ; as, for instance, it may contain a direction to the party defendant to yield up, or to quiet, or to continue, the possession of the land, or other property, which constitutes the subject-matter of the decree in favor of the other party." See High on Injunc. § 4; *D. & N. O. R. R. Co. v. A. T. & S. F. R. R. Co.*, 13 Fed. Rep. 546 ; *Arnold v. Bright*, 41 Mich. 210 ; *Railway Co. v. Railway Co.*, 61 Mich. 9; *Spofford v. Railway Co.*, 66 Me. 51 ; *Wangelin v. Goe*, 50 Ill. 459.

Our statutes contain no provisions or exceptions in this class of cases, taking them out of the well settled rule of equity ; the only innovation upon the rule, by statute, conferring upon the courts such extraordinary power is in the case of mines, sec. 159, Civil Code, and in those cases, by sec. 160, the writ is declared void if issued without notice. Under the provisions of the statutes, as well as established principles of equity, the mandatory writ was absolutely void for want of notice as well as from want of adjudication.

IV. The writ being void, no proceedings for contempt could be predicated upon a refusal to obey it. There is a wide and well defined distinction between a writ improvidently or erroneously issued by a court having jurisdiction of the subject-matter and parties, and one issued without such ju-

risdiction. In the first instance, the writ must be implicitly obeyed, no matter how erroneous, unless vacated or dissolved. 2 Danl. Chy. Prac. 1743-4; Kerr on Injunc. *569; *Woodward v. Earl of Lincoln*, 3 Swans. 626 ; *Spokes v. Banbury B. of H.*, L. R. 1 Eq. Cas. 41.

In the latter case, the writ is not voidable but absolutely void—is no writ—entitled to no respect and demanding no attention. *Haines v. Haines*, 35 Mich. 143 ; *Browne v. Moore*, 61 Cal. 432; *Pennsylvania v. Wheeling B. Co.*, 18 How. 421 ; *Ex parte Fiske*, 113 U. S. 718; *Worden v. Searles*, 121 U. S. 14.

It follows that the court erred in finding the defendant guilty of contempt in refusing to obey the writ of injunction.

Such finding will be reversed and the cause remanded with instructions to discharge the defendant and dismiss the bill of complaint.

*Reversed.*